**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC,<br><br>　　　Plaintiff,<br><br>v.<br><br>SEMINOLE SPORTS, LLC d/b/a SPENCERZ SPORTS BAR, BRENDA KIDD d/b/a ALLENS HOUSE KARAOKE,<br><br>　　　Defendants. | Case No.:<br><br><br>**COMPLAINT**<br>**TRADEMARK INFRINGEMENT, § 15 U.S.C. 1114**<br>**UNFAIR COMPETITION, § 15 U.S.C. 1125**<br>**VIOLATION OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT, S.C. CODE ANN. §§ 39-5-20, et. seq.**<br><br>**NON- JURY** |

The Plaintiff, Phoenix Entertainment Partners, LLC ("Phoenix"), by its undersigned counsel, hereby complains of the Defendants Seminole Sports, LLC d/b/a Spencerz Sports Bar ("Seminole") and Brenda Kidd d/b/a Allens House Karaoke (individually "Kidd," collectively with Seminole, the "Defendants," and each individually as a "Defendant") and for its Complaint alleges as follows:

<u>**JURISDICTION OF THE COURT**</u>

1.　　This is an action for trademark infringement and for related state-law claims in which the Defendants stand accused of using Phoenix's federally registered service marks without authorization in the course of providing commercial karaoke entertainment services and related ancillary services.

2.　　This action arises under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125, as amended. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United

1

States.

3.     This Court further has jurisdiction pursuant to 28 U.S.C. § 1338(a), in that this civil action arises under acts of Congress relating to trademarks, and, as to the Plaintiff's federal unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

4.     This Court has supplemental jurisdiction over the subject matter of Phoenix's state law claims pursuant to 28 U.S.C. § 1367(a), in that the claims are so related to Phoenix's federal claims that they form part of the same case or controversy.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because all of the Defendants reside in this State and judicial district.

6.     This Court has personal jurisdiction over each of the Defendants, based upon the Defendants' residence in this State and judicial district and conduct of significant business here, and in that the acts of which the Defendants stand accused were undertaken in this State and judicial district.

## THE PLAINTIFF

7.     Phoenix is a North Carolina limited liability company having its principal place of business in Pineville, North Carolina.

## THE DEFENDANTS

8.     Upon information and belief, Seminole is a limited liability company organized under the State of South Carolina that operates an eating and drinking establishment known as Spencerz Sports Bar and Restaurant in Myrtle Beach at which karaoke entertainment services are provided.

9.    Upon information and belief, Kidd is an individual who operates a mobile entertainment business under the name Allens House Karaoke, and who operates the equipment and provides karaoke-related services.

## BACKGROUND FACTS

10.    Karaoke is a popular form of participatory entertainment commonly found in bars and restaurants and other types of venues throughout the United States.

11.    The basic premise of a karaoke show is that the venue hosting the show provides patrons with access to a sound system and specially prepared karaoke accompaniment tracks, so that individual patrons may perform for the crowd.

12.    Generally, a "karaoke accompaniment track" is an audiovisual work comprising a re-recorded version of a popular song without the lead vocals synchronized to a graphical component containing a lyric display, cueing information, and other information.

13.    When a karaoke accompaniment track is publicly performed, the graphical component is displayed to the patron who is performing and may be displayed to the crowd as well.

14.    Venues that offer karaoke entertainment, including Seminole, do so as part of a commercial transaction wherein the venues supply their patrons with karaoke entertainment services in exchange for their patronage of the establishment and the purchase of food and beverages.

15.    The purchase and consumption of alcoholic beverages in connection with karaoke shows is particularly encouraged to enable patrons to overcome inhibitions against singing in public.

16.    Most venues that offer karaoke entertainment, including Seminole, hire mobile

entertainment operators, such as Kidd, to provide the karaoke entertainment services on the venues' behalf.

17.     Phoenix is the owner of SOUND CHOICE, a leading brand of karaoke accompaniment tracks that is particularly well known to commercial karaoke operations including bars, restaurants, and other venues as described above.

18.     Phoenix also licenses the use of its SOUND CHOICE brand to commercial karaoke operators and venues in connection with karaoke entertainment services.

19.     Over the course of nearly three decades in business, Slep-Tone Entertainment Corporation ("Slep-Tone"), Phoenix's predecessor-in-interest, re-recorded and released more than 16,500 SOUND CHOICE-branded popular songs on special compact discs known as CD+G ("compact disc plus graphics") discs and, more recently, a subset of that catalog in another common karaoke format, MP3+G ("MP3 plus graphics") on compact discs.

20.     SOUND CHOICE-branded karaoke tracks are wildly popular among karaoke entertainment providers, patrons, and home consumers.  According to some estimates, as corroborated by investigative data, more than half of all accompaniment tracks played at karaoke shows in the United States originated from Slep-Tone's recordings.

21.     The popularity of SOUND CHOICE karaoke tracks derives from the market's perception that the recordings are usually the most faithful to the sound of the original recording artist and as providing the most accurate singing cues as part of the video display, characteristics that are highly valued by karaoke singers.

22.     Likewise, the association of the SOUND CHOICE brand with a mobile entertainment operator's karaoke business and/or with a venue's karaoke entertainment offerings confers on the operator and venue a perception in the marketplace—and among karaoke patrons—

of legitimacy and professionalism.

## THE RIGHTS OF THE PLAINTIFF

23.     Phoenix is the owner of the federal service mark registrations listed in Annex A hereto ("the Sound Choice Marks"), by virtue of an assignment instrument from Slep-Tone dated February 15, 2015.

24.     Slep-Tone acquired its rights in the Sound Choice Marks by virtue of its registrations based on use of the marks in commerce in connection with the advertising and performance of karaoke entertainment services, either directly or by related companies that include hundreds of controlled licensees.

25.     Phoenix is also the sole member of Sound Choice Entertainment, LLC, a Texas limited liability company ("SCE") that is directly engaged in the business of providing karaoke entertainment services to venues in various locations around the United States.

26.     Phoenix and its predecessor have, for the entire time the Sound Choice Marks have been federally registered, provided the public, including the Defendants, with notice of those federal registrations through the consistent application of the symbol ® to its marks in connection with services, when and where appropriate.

27.     The Sound Choice Marks are indicators of Phoenix as the origin of karaoke entertainment services provided in connection with the Sound Choice Marks.

## THE ACTIVITIES OF THE DEFENDANTS

A.     **The Defendants' Unauthorized Use in Commerce of the Sound Choice Marks**

28.     Defendant Seminole hosts karaoke shows comprising karaoke entertainment services at its establishment.

29.     Upon information and belief, Defendant Seminole contracted with third-party

operator Kidd as its agent to supply karaoke entertainment services to Seminole's patrons.

30.     Upon information and belief, Defendants Kidd and Seminole advertised the availability of karaoke entertainment services at Seminole's venue at specific times, in order to inform potential patrons of the services and to encourage those potential patrons to visit Seminole's venue at those times.

31.     In order to supply karaoke entertainment services to a venue such as Seminole, Defendant Kidd prepares and executes a karaoke show by acquiring, or acquiring access to, appropriate sound equipment for playing karaoke accompaniment tracks; connecting the sound equipment to a source for karaoke accompaniment tracks; causing selected karaoke accompaniment tracks to be played over the sound equipment; controlling the organization and flow of the performances; encouraging Seminole's patrons to purchase food and/or beverages and tip their servers and acting as the on-microphone emcee of the show.

32.     As Defendants Kidd and Seminole supplied Seminole's patrons with karaoke entertainment services, the Defendants caused and/or permitted the Sound Choice Marks to be displayed repeatedly and frequently in connection with the services.

33.     Defendant Kidd obtained the karaoke accompaniment tracks she uses in her shows by copying those tracks from an illicit source.

34.     The Sound Choice Marks are displayed repeatedly and frequently in connection with the Defendants' services because, rather than copying only the communicative content of the tracks she pirated, Defendant Kidd also elected to copy the Sound Choice Marks and apply those marks to the unauthorized tracks she made, knowing that the addition of the Sound Choice Marks to her pirated tracks would confer an air of legitimacy upon those tracks and upon her services, as opposed to tracks and services that omitted the marks.

35.     The Sound Choice Marks as displayed in connection with those services are identical to the marks for which Phoenix has obtained federal service mark registrations, for the identical services for which those registrations were issued.

36.     Because of the well-known association of the Sound Choice Marks with karaoke entertainment services, the display of the Sound Choice Marks in connection with the services, regardless of the particular song being played, acts as a general advertisement for the services as well as an indicator of the quality of the services being provided.

37.     Because of the frequent, repeated display of the Sound Choice Marks across numerous instances of widely disparate songs, patrons who received karaoke entertainment services from Kidd and Seminole are likely to view the display of the Sound Choice Marks as an indicator of the affiliation, connection, or association of the Defendants with Phoenix, or of Phoenix's sponsorship or approval of the services and related commercial activities, rather than merely as indicating Phoenix as the creator of the underlying communicative content of any particular song being performed.

38.     The foregoing activities undertaken in connection with the Sound Choice Marks were undertaken in derogation of Phoenix's rights in the Sound Choice Marks.

39.     The foregoing activities were and are undertaken without any form of license, permission, or acquiescence from Phoenix and without any legitimate basis upon which such activities could be legally undertaken as a result of using tracks not authorized by Phoenix.

40.     Defendant Seminole's patrons are likely to be confused regarding the origin or sponsorship of the services being supplied and regarding the affiliation or connection of Defendants Kidd and Seminole with Phoenix, based on their mistaken belief that the services being provided are provided with Phoenix's knowledge and approval.

41.    As a result of those activities, Phoenix has been damaged through the loss of revenues associated with the sale of similar services or with a license to provide similar services, as well as through the loss of Phoenix's ability to control the quality of services provided in connection with the Sound Choice Marks.

42.    The provision of the services as described above is an essential part of a commercial transaction wherein the patrons purchase food and beverages and receive access to the tracks and to the services in connection with their patronage, even if the patrons do not directly pay for access to the tracks or the services.

43.    When the karaoke shows are ongoing, the shows are generally the principal entertainment focus of Defendant Seminole's establishment.

44.    Defendant Seminole derives value from the karaoke shows in the form of increased patronage and increased sales of food and beverages.

45.    Upon information and belief, Defendant Seminole has advertised the availability of karaoke shows on its premises, via its own advertising apparatus and as an activity attributable to its business, rather than as adjunct or auxiliary to its businesses.

46.    Defendant Seminole has had actual knowledge of the foregoing activities being undertaken at its establishment.

47.    On 6/8/2016 Phoenix shipped a warning letter in a package addressed to William J. Spencer, the owner of Seminole Sports, LLC d/b/a Spencerz Sports Bar, 1880 Highway 17 N, Myrtle Beach, SC 29575, via United Parcel Service.  According to the records of United Parcel Service that package which contained the warning letter was delivered on 6/9/2016.

48.    On 6/8/2016 Phoenix shipped a warning letter in a package addressed to William J. Spencer, the Registered Agent for Seminole Sports, LLC, 2710 Canvas Back Trail, Myrtle

Beach, SC 29588, via United Parcel Service. According to the records of United Parcel Service that package which contained the warning letter was refused by the receiver.

49.    In the letter, Defendant Seminole was offered information about licensing and compliance programs that Phoenix offers to venues that feature karaoke entertainment, along with the opportunity to bring its karaoke entertainment services into compliance with the law and with Phoenix's policies regarding the use of its intellectual property.

50.    In particular, Defendant Seminole was offered the opportunity, at no charge, to request, via Phoenix's Safe Harbor program, that Phoenix evaluate the licensing status and needs of its karaoke entertainment provider and to avoid liability as long as the venue took heed of Phoenix's evaluation and acted accordingly.

51.    Defendant Seminole did not take advantage of the Safe Harbor program.

52.    Despite these offers, and despite its knowledge of the unlicensed, infringing character of the karaoke entertainment services being provided in its establishment, Defendant Seminole did not elect to bring its karaoke entertainment services into compliance.

**B.    The basis for imposing secondary liability including contributory and vicarious liability on Seminole**

53.    Defendant Seminole has the right to control the means and the details of the process by which its third-party agent accomplishes its respective tasks, including, without limitation, controlling the dates and starting and stopping times of shows, determining whether particular content (such as offensive-language content) is permitted to be played at shows, determining the style and genre of music played at shows, and determining whether the third-party agent is permitted to use Defendant Seminole's equipment (such as television displays, sound equipment, stage, etc.) as part of the shows.

54.    In particular, Defendant Seminole has the right to control whether or not the activities occur on its premises.

55.    As noted previously, Defendant Seminole had knowledge of its agent's direct infringement of the Sound Choice Marks.

56.    Despite this knowledge, Defendant Seminole continued to use Defendant Kidd to commit direct infringement of the Sound Choice Marks during the course of providing karaoke entertainment services to its patrons.

57.    Defendant Seminole had the right and ability to supervise Kidd's activities in its establishment, including, without limitation, the right and ability to determine whether Kidd provided karaoke entertainment services in connection with the Sound Choice Marks.

58.    Defendant Seminole knew or had reason to know, based on the amounts it was paying  Kidd to provide the services, its interaction with Kidd, and its knowledge of Kidd's infringement, that Kidd was unlikely to be able to respond for significant damages for infringement.

59.    The arrangement between Defendants Seminole and Kidd exploited Kidd's marginal financial condition in two ways:  first, by reducing the amount Seminole had to pay Kidd to provide the services in a manner that would be profitable to Kidd; and second, by attempting to allocate the burden of any claims of infringement to Kidd, an undercapitalized "dummy" operation, in a naked effort to avoid financial responsibility and liability for the infringement while remaining the principal beneficiary of the infringement.

60.    In short, the arrangement between Seminole and Kidd is a sham designed to reap the rewards of infringement while escaping the liabilities.

61.    Despite Defendant Seminole having knowledge of the infringing character of the

activities and the ability to control whether those activities occur, Defendant Seminole elected not to stop the infringement from occurring, instead continuing to enjoy the benefits of the infringement.

62.     As such, to the extent that it is not directly liable as an infringer, Defendant Seminole is secondarily liable for the continuing infringement that has occurred and is occurring on its premises.

**C.     The Defendants' pattern of infringing conduct**

63.     The Defendants' conduct as described above with respect to the Sound Choice Marks is not isolated to the use of the Sound Choice Marks, but also extends as part of a large-scale program of infringing activities and piracy involving numerous other producers' intellectual property rights, on the same terms.

64.     Essentially, the Defendants, and particularly Kidd, with Seminole as the willing beneficiary, have built an entire business model and moneymaking scheme premised on a competitive advantage derived from the infringement of the intellectual property rights of others, including Phoenix.

65.     The Defendants' activities constitute unfair competition against Phoenix's own licensees, all of whom provide karaoke entertainment services without engaging in that infringement, at significant cost.

66.     The Defendants' wrongful conduct exerts illegitimate and unfair pressure upon the market for karaoke services in this State and judicial district through the unlicensed use of the Sound Choice Marks in connection with those services, thereby diminishing the value of licenses and permissions in the hands of Phoenix, its subsidiary, and its licensees.

67.     The diminution of the value of licenses encourages or forces karaoke operators to

forego licenses in order to compete profitably.

## FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)

68.    Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

69.    Each Defendant used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke entertainment services, by repeatedly displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services and by using the Sound Choice Marks in connection with the advertising of the services.

70.    Each Defendant's use of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946, as amended.

71.    Phoenix did not license or otherwise give permission to any Defendant to use the Sound Choice Marks in connection with the provision of their services.

72.    Each Defendant's use of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive its customers and patrons into believing that the services being provided are provided with the authorization of Phoenix.

73.    Each Defendant's acts were willful, knowing, and intentional.

74.    Defendant Seminole, having hired a third-party agent Kidd to provide karaoke entertainment services in its name, at its venue, primarily for the purpose of avoiding liability for infringement, is additionally vicariously liable for the infringing acts of that agent.

75.    Each Defendant's activities constitute the infringement of the federally registered Sound Choice Marks in violation of 15 U.S.C. § 1114(1).

76.    Phoenix has been damaged by each Defendants' infringing activities.

77.     Unless enjoined by the Court, each Defendant's infringing activities as described above will continue unabated and will continue to cause harm to Phoenix.

**SECOND CLAIM FOR RELIEF**
**UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)**

78.     Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as full as if set forth verbatim herein.

79.     Each Defendant has supplied karaoke entertainment services to customers or patrons, in connection with which the Sound Choice Marks were used in the advertising and performance of the services and not merely as an adjunct to the playing of any particular communicative content contained within karaoke accompaniment tracks.

80.     The use of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive the customers or patrons into believing, falsely, that Phoenix sponsored or approved the Defendants' services and commercial activities.

81.     Because of each Defendant's wholly unauthorized uses of the Sound Choice Marks in the manner described above, Phoenix was denied revenue from the sale or licensing of authorized services and deprived of control over the use of the Sound Choice Marks.

82.     Because Phoenix has been denied this revenue and control, it has been damaged by each Defendant's uses.

83.     Phoenix is a provider of karaoke entertainment services, directly, through controlled licensees, and through its wholly owned subsidiary SCE.

84.     Each Defendant's activities are part of a program and money-making scheme premised upon the unlicensed use of the Sound Choice Marks in connection with karaoke entertainment services and ancillary services that form part of the economic transaction among Seminole, Kidd and Seminole's patrons.

85.     Each Defendant's activities in furtherance of this program of infringement have caused a competitive injury to Phoenix, both directly and on the basis of damage to Phoenix's licensees.

86.     Each Defendant's activities constitute unfair competition in violation of 15 U.S.C. § 1125(a).

87.     Unless enjoined by the Court, each Defendant's unfair competition activities as described above will continue unabated and will continue to cause harm to Phoenix.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
## UNDER S.C. CODE ANN. §§ 39-5-20, et. seq.

88.     Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

89.     Defendants used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

90.     Defendants' acts of infringement occurred during the conduct of trade or commerce, from which Defendants' derived an economic benefit.

91.     Defendants' acts of infringement constitute unfair methods of competition and unfair or deceptive acts or practices, and such conduct, therefore, violates the South Carolina Unfair Trade Practices Act., S.C. Code Ann. §§ 39-5-20, *et. seq*.

92.     Defendants' acts of infringement create a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Phoenix.

93.    Defendants' conduct also affects the public interest, is capable of repetition and, upon information and belief, has been repeated on numerous occasions as evidenced by the various karaoke performances Defendants performed and continue to perform.

94.    As a direct and proximate result of each of Defendant's acts of infringement, Phoenix has suffered a pecuniary loss, including the loss of revenue associated with sales of licenses and/or compact discs to karaoke service providers, commensurate with the demand for the contents of those discs, which revenue would have been received but for Defendants' acts in creating or acquiring counterfeits of SOUND CHOICE-branded accompaniment tracks.

95.    As the direct and proximate result of the unfair methods of competition and unfair or deceptive acts and practices of Defendants, Phoenix has sustained injury and is entitled to recover actual damages in an amount to be proven at trial.

96.    Defendants' use or employment of the unfair methods of competition and unfair or deceptive acts or practices was a willful and knowing violation of S.C. Code Ann. §§ 39-5-20, et. seq., and, as a result, Phoenix is entitled to recover from Defendants three (3) times the actual damages that it has sustained under S.C. Code Ann. § 39-5-140.

97.    Phoenix is further entitled to recover its reasonable attorney's fees and court costs from Defendants under S.C. Code Ann. § 39-5-140.

98.    Unless enjoined by the Court, Defendants' unfair competition activities as described above will continue unabated and will continue to cause harm to Phoenix.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Phoenix prays for judgment against each of the Defendants, jointly and severally, and that the Court:

A.    Find that each Defendant has committed acts of infringement, including, but not

limited to counterfeiting, of the federally registered Sound Choice Marks, in violation of 15 U.S.C. § 1114(1);

B.     Find that each Defendant has engaged in unfair competition detrimental to Phoenix in violation of 15 U.S.C. § 1125(a);

C.     Find that each Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices detrimental to Phoenix in violation of the South Carolina Unfair Trade Practices Act., S.C. Code Ann. §§ 39-5-20, *et. seq.*

D.     Enter judgment against each Defendant and in favor of Phoenix on all applicable counts;

E.     Award to Phoenix each Defendant's profits and the damages sustained by Phoenix because of that Defendant's conduct in infringing the Sound Choice Marks, or, in the alternative, statutory damages per trademark infringed by counterfeiting, and in any event in an amount not less than $50,000 per Defendant;

F.     Award to Phoenix each Defendant's profits and the damages sustained by Phoenix because of that Defendant's acts of unfair competition under 15 U.S.C. § 1125(a);

G.     Award to Phoenix treble, punitive, or otherwise enhanced damages, as available, upon a finding that any Defendant acted willfully in the conduct of its infringement;

H.     Order that all computer disks, drives, or other media belonging to Defendant Kidd, which media enable that Defendant to engage in infringement as described herein, to be delivered up or seized for destruction;

I.     Grant Phoenix preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and further false designations of origin, by each Defendant, specifically including injunctive relief against the making, copying, sharing, selling, or

16

otherwise using digitized copies of karaoke accompaniment tracks, commercially or otherwise, which tracks are marked with any mark or other designation belonging to any party from whom the Defendant has not obtained written authorization from the owner thereof to make, copy, share, sell, or otherwise use the digitized copy, such copies acting to enable the Defendant to engage in service mark infringement, unfair competition, and deceptive trade practices;

J.      Award Phoenix its costs of suit and attorney's fees, to the extent not awarded above; and

K.      Grant Phoenix such other and further relief as justice may require.

Respectfully submitted this the 13th day of May, 2017.

BELZER PC

 s/Michael C. Cerrati
Michael C. Cerrati, Esq. (Fed. Bar No. 10488)
7 Office Way, Suite 200
Hilton Head Island, SC 29928
912-236-3001 office
843-271-6658 direct
912-236-3003 fax
mcerrati@belzerlaw.com
*Attorney for Plaintiff*

## <u>ANNEX A</u>

## FEDERAL TRADEMARK REGISTRATIONS

**Reg. No.**      **Mark**                                                      **Reg. Date**

**Goods/Services**

---

4,099,045      SOUND CHOICE                                      February 14, 2012

Conducting entertainment exhibitions in the nature of karaoke shows


4,099,052      SOUND CHOICE & Design (see below)      February 14, 2012

Conducting entertainment exhibitions in the nature of karaoke shows



"SOUND CHOICE & Design" refers to the following display mark:

